UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL JAYSON,<br><br>      Plaintiff,<br><br>v.<br><br>TALLGRASS ENERGY, LP, WILLIAM R. MOLER, MARCELINO OREJA ARBURÚA, GUY G. BUCKLEY, ROY N. COOK, THOMAS A. GERKE, WALLACE C. HENDERSON, MATTHEW J.K. RUNKLE, and TERRANCE D. TOWNER,<br><br>      Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1. This action concerns a proposed transaction announced on December 17, 2019, pursuant to which Tallgrass Energy, LP ("Tallgrass" or the "Company") will be acquired by affiliates of Blackstone Infrastructure Partners ("Blackstone") together with affiliates of Enagas, S.A. ("Enagas") (Blackstone and Enagas are, collectively, the "Sponsors").

2. On December 16, 2019, the Board of Directors (the "Board" or "Individual Defendants") of Tallgrass's general partner, Tallgrass Energy GP, LLC's ("TGE GP"), caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Tallgrass's stockholders will receive $22.45 per share in cash for each share of common stock they own.

3. On February 11, 2020, in order to convince Tallgrass's stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, Tallgrass stockholders will soon be required to vote on the Proposed Transaction at a special meeting to be held on April 16, 2020 (the "Stockholder Vote") without the benefit of the material information. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Tallgrass stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Tallgrass common stock.

10. Defendant Tallgrass is a Delaware limited partnership and a party to the Merger Agreement. Tallgrass common stock is traded on the NYSE under the ticker symbol "TGE."

11. Defendant William R. Moler is, Chief Executive Officer, and a director of the TGE GP.

12. Defendant Marcelino Oreja Arburúa is a director of TGE GP.

13. Defendant Guy G. Buckley is a director of TGE GP.

14. Defendant Roy N. Cook is a director of TGE GP and a member of the Conflicts Committee.

15. Defendant Thomas A. Gerke is a director of TGE GP and a member of the Conflicts Committee.

16. Defendant Wallace C. Henderson is a director of TGE GP.

17. Defendant Matthew J.K. Runkle is a director of TGE GP.

18. Defendant Terrance D. Towner is a director of TGE GP and a member of the

Conflicts Committee.

19.     The defendants identified in paragraphs 11 through 18 are collectively referred to herein as the "Individual Defendants."

## FACTS

20.     Tallgrass is a publicly-traded, growth-oriented limited partnership that owns, operates, acquires and develops midstream energy assets in North America. Tallgrass's operations are conducted through, and its operating assets are owned by, its direct and indirect subsidiaries, including Tallgrass Equity, LLC, a Delaware limited liability company, in which Tallgrass directly owns an approximate 63.75% membership interest as of February 7, 2020. Tallgrass is located in and provides services to certain key United States hydrocarbon basins, including the Denver-Julesburg, Powder River, Wind River, Permian and Hugoton-Anadarko Basins and the Niobrara, Mississippi Lime, Eagle Ford, Bakken, Marcellus, and Utica shale formations.

21.     Blackstone is one of the world's leading investment firms. Blackstone seeks to create positive economic impact and long-term value for its investors, the companies it invests in, and the communities in which it does business. Blackstone's asset management businesses, with $554 billion in assets under management, includes investment vehicles focused on private equity, real estate, public debt and equity, growth equity, opportunistic, non-investment grade credit, real assets and secondary funds, all on a global basis

22.     Enagas is a leading international energy company with 50 years' experience. It is one of the companies with the most LNG terminals in the world. It has a presence in Spain, the USA, Mexico, Chile, Peru and Greece. It is also one of the shareholders in the Trans Adriatic Pipeline (TAP), which will connect Greece, Albania and Italy to bring natural gas from the Caspian Sea to Europe. The company is certified as a Transmission System Operator (TSO) by the European Union

and is an international benchmark in the development and operation of gas networks. It owns more than 12,000 km of gas pipelines, three strategic storages and nine regasification plants. In Spain, Enagas is the Technical Manager of the Gas System and has developed the country's key gas infrastructures.

23. On December 16, 2019, TGE GP's Board caused the Company to enter into the Merger Agreement.

24. Pursuant to the terms of the Merger Agreement, Tallgrass's stockholders will receive $22.45 in cash for each share of Tallgrass common stock they own in an all-cash merger.

25. The Merger Agreement further provides that Tallgrass has agreed with Prairie Private Acquiror LP, a Delaware limited partnership and affiliate of the Sponsors ("Buyer"), Prairie Merger Sub LLC, a Delaware limited liability company and wholly-owned subsidiary of Buyer ("Buyer Sub"), and TGE GP. Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, that Buyer will be merged with and into the Company, with the Company surviving (the "Merger").

26. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each Class A Share (other than Sponsor Shares) issued and outstanding as of immediately prior to the Effective Time shall be converted into the right to receive $22.45 per Class A Share in cash without any interest thereon (the "Merger Consideration").

27. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

28. It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully

5

assess whether the Proposed Transaction is in their best interests prior to the vote.

29. In addition, Section 8.2(b) of the Merger Agreement requires Tallgrass to pay a $70,000,000 "termination fee" to Buyer in the event this agreement is terminated by Tallgrass and improperly constrains the Company from obtaining a superior offer.

30. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

31. As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

32. First, the Proxy omits material information regarding Tallgrass's financial projections.

33. With respect to Tallgrass's financial projections, the Proxy fails to disclose, (i) all line items used to calculate (a) Adjusted EBITDA and (b) Cash Available for Dividends, and (ii) a reconciliation of all non-GAAP to GAAP metrics.

34. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the Company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion and to provide stockholders with full and relevant information in considering how to vote.

35. Second, the Proxy omits material information regarding the analysis performed by the Conflicts Committee's financial advisor Evercore Group L.L.C. ("Evercore") in connection with the Proposed Transaction.

36. With respect to Evercore's *Corporate-Level—Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the Company's after-tax free cash flows, (ii) the Company's terminal

6

value, (iii) Evercore's basis for applying an EBITDA multiples range of 9.0x to 11x to determine terminal value, and (iv) the individual inputs and assumptions underlying the range of discount rates of 6.5% to 7.5% and a growth rate of 0.25% to 0.75%. This information must be disclosed to make the Proxy not materially misleading to Tallgrass stockholders and provide stockholders with full and relevant information in considering how to vote.

37. With respect to Evercore's *Corporate-Level— Discounted Dividend Analysis*, the Proxy fails to disclose (i) Evercore's basis for utilizing a terminal yield range of 8.0% to 12.0%, (ii) terminal value, and (iii) the individual inputs and assumptions underlying a cost of equity range of 7.5% to 8.5% and 11.0% to 13.0%. This information must be disclosed to make the Proxy not materially misleading to Tallgrass stockholders and provide stockholders with full and relevant information in considering how to vote.

38. With respect to Evercore's *Corporate-Level— Peer Group Trading Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis. This information must be disclosed to make the Proxy not materially misleading to Tallgrass stockholders and provide stockholders with full and relevant information in considering how to vote.

39. With respect to Evercore's *Sum of the Parts—Discounted Cash Flow Analysis*, the Proxy fails to disclose the individual inputs and assumptions underlying (i) terminal values; (ii) estimated range of EBITDA exit multiples; (iii) range of discount rates; and (iv) range of perpetuity growth rates. This information must be disclosed to make the Proxy not materially misleading to Tallgrass stockholders and provide stockholders with full and relevant information in considering how to vote.

40. With respect to Evercore's *Sum of the Parts—Precedent M&A Transaction Analysis*,

the Proxy fails to disclose the individual multiples and metrics for the transactions observed by Evercore in the analysis. This information must be disclosed to make the Proxy not materially misleading to Tallgrass stockholders and provide stockholders with full and relevant information in considering how to vote.

41. With respect to Evercore's *Sum of the Parts—Peer Group Trading Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis. This information must be disclosed to make the Proxy not materially misleading to Tallgrass stockholders and provide stockholders with full and relevant information in considering how to vote.

42. The omission of the above-referenced material information renders the Proxy false and misleading.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

48. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

49. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 3, 2020

         **MOORE KUEHN, PLLC**

         */s/Justin Kuehn*
         Justin A. Kuehn
         Fletcher W. Moore
         30 Wall Street, 8th floor
         New York, New York 10005
         Tel: (212) 709-8245
         jkuehn@moorekuehn.com
         fmoore@moorekuehn.com

         *Attorneys for Plaintiff*